## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Shanghai Qianzhuo Network Technology Co., Ltd. d/b/a FutureDiamond, | |
| Plaintiff, | |
| v. | C.A. No. 25-cv-830-CFC |
| Cattasaurus, LLC, | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER

OF COUNSEL:

Matthew De Preter
ARONBERG GOLDGEHN
225 W. Washington St. Ste. 2800
Chicago, IL 60606
312-755-3153
cdepreter@agdglaw.com

PRICKETT, JONES & ELLIOTT, PA
J. Clayton Athey (#4378)
Briana Manobianco (#6330)
1310 North King Street
Wilmington, DE 19801
302-888-6507
jcathey@prickett.com
bvmanobianco@prickett.com

Dated: July 17, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

I.      INTRODUCTION ................................................................................... 1

II.     THE BACKGROUND FACTS ................................................................ 2

III.    ARGUMENT ......................................................................................... 4

    A.    Legal Standard ................................................................................. 4

    B.    There Is a High Likelihood that Plaintiff Will Prevail on
          Its Claims ....................................................................................... 5

    C.    Plaintiff Will Suffer Irreparable Harm In the Absence of a
          Preliminary Injunction ................................................................. 12

    D.    Granting the Temporary Restraining Order will not result in
          even greater harm to the Defendant ........................................... 14

    E.    The Public Interest Favors Granting Temporary Injunctive Relief. ........ 15

IV.     NO BOND FOR THE TRO OR PRELIMINARY INJUNCTION ............. 16

CONCLUSION ............................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Am. Innotek, Inc. v. United States*,
128 Fed. Cl. 135 (2016) ........................................................................8

*Atl. Richfield Co. v. Tribbitt*,
399 A.2d 535 (Del. Ch. 1977) .............................................................15

*Black & Decker Inc. v. Robert Bosch Tool Corp.*,
2006 WL 3446144 (N.D. Ill. Nov. 29, 2006) ......................................13

*Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*,
246 F.3d 1368 (Fed. Cir. 2001) .............................................................9

*Cantor Fitzgerald, L.P. v. Cantor*,
724 A.2d 571 (Del. Ch.1998) ................................................................5

*CBOT Hldgs., Inc. v. Chicago Bd. Options Exch., Inc.*,
2007 WL 2296356 (Del. Ch. Aug. 3, 2007) ........................................14

*Cipla Ltd. v. Amgen Inc.*,
386 F. Supp. 3d 386 (D. Del. 2019).....................................................13

*Cooper v. Crowl*,
2025 WL 753868 (D. Del. Mar. 10, 2025) ............................................4

*Edge Sys. LLC v. Aguila*,
635 Fed. App'x. 897 (Fed. Cir. 2015) ...................................................5

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) ........................................................7, 10

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
796 F.3d 1312 (Fed. Cir. 2015) .............................................................6

*Gorham Mfg. Co. v. White*,
81 U.S. 511 (1871)..................................................................................7

*Kimble v. Marvel Ent., LLC*,
576 U.S. 446 (2015)..............................................................................15

ii

*Lee v. Dayton–Hudson Corp.*,
  838 F.2d 1186 (Fed. Cir. 1988) ...........................................................................6

*In re Mann*,
  861 F.2d 1581 (Fed. Cir. 1988) ...........................................................................6

*Mas-Hamilton Grp. v. LaGard, Inc.*,
  156 F.3d 1206 (Fed. Cir. 1998) ...........................................................................6

*Mehl v. Smith*,
  2022 WL 481785 (M.D. Pa. Feb. 16, 2022) ........................................................4

*MRC Innovations, Inc. v. Hunter Mfg., LLP*,
  747 F.3d 1326 (Fed. Cir. 2014) ...........................................................................6

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
  122 F.3d 1396 (Fed. Cir. 1997) ...........................................................................6

*Pell v. Kill*,
  135 A.3d 764 (Del. Ch. 2016) ..............................................................................5

*Reilly v. City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017) .................................................................................5

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  659 F.3d 1142 (Fed. Cir. 2011) .........................................................................14

*Samiam Grp., LLC v. Coopersburg Assocs., Inc.*,
  650 F. Supp. 3d 295 (E.D. Pa. 2023).................................................................8

*Saudi Basic Indus. Corp. v. Exxon Corp.*,
  364 F.3d 106 (3d Cir. 2004) .................................................................................4

*Titan Tire Corp. v. Case New Holland, Inc.*,
  566 F.3d 1372 (Fed. Cir. 2009) .....................................................................5, 7

*Trilogy Portfolio Co., LLC v. Brookfield Real Est. Fin. P'rs, LLC*,
  2012 WL 120201 (Del. Ch. Jan. 13, 2012)........................................................13

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)..................................................................................................13

iii

**RULES**

Fed. R. Civ. P. 65 .................................................................................................1

**STATUTES**

28 U.S.C. §§2201 and 2202 .................................................................................4

35 U.S.C. § 102 ....................................................................................................7

35 U.S.C. § 171 ....................................................................................................6

35 U.S.C. § 283 ....................................................................................................4

**OTHER AUTHORITIES**

37 C.F.R. § 1.153(a) ............................................................................................6

4939-1708-3734, v. 1

Plaintiff Shanghai Qianzhuo Network Technology Co., Ltd. d/b/a FutureDiamond ("Plaintiff" or "FutureDiamond"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in support of Plaintiff's Motion for a Temporary Restraining Order pursuant to Rule 65 of the Federal Rules of Civil Procedure (the "Motion"). Through the Motion, Plaintiff seeks immediate injunctive relief to prevent imminent and irreparable harm that would result from the filing by Defendant Cattasaurus, LLC's ("Defendant" or "Cattasaurus") of a complaint of patent infringement with Amazon.com against Plaintiff's products. As set forth herein, Plaintiff satisfies all four factors required for the issuance of a temporary restraining order: (1) likelihood of success on the merits, (2) irreparable harm in the absence of relief, (3) the balance of equities tipping in Plaintiff's favor, and (4) the public interest supporting injunctive relief.

## I.     INTRODUCTION

FutureDiamond requests this Court to temporarily enjoin Cattasaurus from interfering with Plaintiff's sales of products in the marketplace pending resolution of this litigation. Defendant wrongfully alleges that Plaintiff's products infringe on U.S. Patent No. D1,029,404 S (the " '404 patent"). Without the Court's expedited intervention, Plaintiff faces the risk of its e-commerce store being shut down, loss of market share, diminished Amazon rankings, and damage to reputation and

goodwill—harm that is irreparable and not compensable by monetary damages. Immediate injunctive relief is both necessary and appropriate.

## II.    THE BACKGROUND FACTS

Amazon has a system in place to protect the intellectual property rights of owners.  Under this system, a rights owner can file a complaint against seller on Amazon alleging that the seller has violated the rights owner's trademark, patent, and/or copyright.  In response, Amazon will delist the seller's products, revoke their selling privileges, and subsequently dispose of the allegedly infringing products.

This system is highly susceptible to abuse.  Amazon's employees are not required to review evidence of alleged infringement in the same manner as the judicial system.  They are not required to weigh the factors for awarding injunctive relief.  Yet they hold significant power to freeze assets, delist products, and even close entire stores all on an *ex parte* basis and without providing legal reasoning, analysis, or justification.  This practice creates a loophole that can be exploited by entities like Defendant.

A significant portion of FutureDiamond's business is conducted through Amazon's online marketplace, which serves as a critical platform for Plaintiffs' operations in the United States.  Declaration of Chuanpeng Ning ("Ning Declaration"), ¶4.  Plaintiffs have invested substantial resources in bringing their products to market, establishing a presence on Amazon and building positive

2

reputations for quality and reliability. *Id.* It requires tremendous time and effort to build product rankings on Amazon, including long-term sustained product sales. *Id.* ¶5. If a product link becomes deactivated for any significant length of time, it will be permanently damaged by losing its ranking, resulting in the product listing appearing significantly further down the list of product searches, which in turn results in fewer sales and further loss of ranking. *Id.* ¶6. Plaintiff's product currently ranks #14 in cat beds on Amazon, and any break in Plaintiff's ability to sell its product creates an extremely high risk of permanently damaging its ability to maintain that highly desirable and profitable ranking. *Id.* ¶7.

Defendant previously contacted Plaintiff boasting about its past success in asserting infringement on Amazon against competitors and taking competitor listings down. *Id.* ¶8. As a result of Defendant's representations, Plaintiff believes that absent a temporary restraining order, Defendant will initiate complaints with Amazon to interfere with Plaintiff's sales of its products. *Id.* ¶9.

Out of necessity, Plaintiff brings the present motion for a TRO to temporarily enjoin Defendant from wrongfully asserting patent rights and from interfering with Plaintiff's sales of products on Amazon.com. An Order enjoining this conduct will preserve the status quo, which is the default status of free and open competition in the marketplace, allowing consumers access to the full range of available products and the benefits of competition, and afford Plaintiff the opportunity to establish in a

3

proper judicial forum its legal right to produce and sell the products Defendant has challenged.

## III.    ARGUMENT

### A.    Legal Standard

Plaintiff brought the present case under Title 35 of the United States Code, and under 28 U.S.C. §§2201 and 2202, to obtain a declaratory judgement of non-infringement with respect to '404 patent.  D.I. 1.  Courts have the discretion to issue an injunction to "prevent the violation of any right secured by patent."  35 U.S.C. § 283.

"The standard for analyzing a motion for a temporary restraining order is the same as that for a motion seeking a preliminary injunction."  *Cooper v. Crowl*, 2025 WL 753868, at *2 (D. Del. Mar. 10, 2025) (quoting *Mehl v. Smith*, 2022 WL 481785, at *2 (M.D. Pa. Feb. 16, 2022)).  To satisfy the burden of proof for a temporary restraining order, "the moving party must demonstrate the classic four elements: (1) a reasonable probability of success on the merits; (2) that denial of injunctive relief will result in irreparable injury; (3) that granting injunctive relief will not result in even greater harm to the nonmoving party; and (4) that granting injunctive relief will be in the public interest."  *Saudi Basic Indus. Corp. v. Exxon Corp.*, 364 F.3d 106, 112 n.6 (3d Cir. 2004).  The first two factors—likelihood of success on the merits and irreparable harm—are threshold elements that must be demonstrated by the

moving party to warrant relief. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

The facts of this case compel the issuance of a temporary restraining order against Defendant because Plaintiff meets all four requirements.

### B.    There Is a High Likelyhood that Plaintiff Will Prevail on Its Claims

The first element of the preliminary injunction test is that Plaintiff must establish a reasonable probability of success on the merits. *Pell v. Kill*, 135 A.3d 764, 783 (Del. Ch. 2016).  This standard "falls well short of that which would be required to secure final relief following trial, since it explicitly requires only that the record establish a reasonable probability that this greater showing will ultimately be made." *Id.* (quoting *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 579 (Del. Ch.1998)).  In the present case Plaintiff can demonstrate a high probability of success on their non-infringement claims.

Success on the merits of a declaratory judgment of non-infringement claim means demonstrating that it is likely the patent is not infringed (or is invalid). *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). Determining noninfringement of a utility patent involves a two-step process: (1) "the court determines the scope and meaning of the asserted claims;" and (2) "the properly construed claims are compared to the accused device or process to assess whether all claim elements are met." *Edge Sys. LLC v. Aguila*, 635 Fed. App'x. 897,

5

902 (Fed. Cir. 2015) (quoting *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998)).

Design patents can only claim ornamental designs, *see* 35 U.S.C. § 171, and cannot claim the structural or functional aspects of the article or device.  37 C.F.R. § 1.153(a); *Lee v. Dayton–Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988). Design patents protect only "the novel, ornamental features of the patented design," limited to the specified article as it is shown in the patent.  *See OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).  Design patents "have 'almost no scope' beyond the precise images shown in the drawings."  *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1333 n.1 (Fed. Cir. 2014) (quoting *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988)).  "A design patent only protects the novel, ornamental features of the patented design." *OddzOn Prod.*, 122 F.3d at 1405.  The scope of a design patent claim "must be limited to the ornamental aspects of the design, and does not extend to 'the broader general design concept.'" *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015) (quoting *OddzOn Prod.*, 122 F.3d at 1405).

To determine if a design patent is infringed, courts apply the "ordinary observer test," which considers whether "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same," such that the resemblance would deceive the observer into "purchas[ing] one

6

supposing it to be the other[.]" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (quoting *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871)). The ordinary observer "is deemed to view the differences between the patented design and the accused product in the context of the prior art." *Id.* at 676. Thus, with the prior art in mind, the test for infringement is: "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Co.*, 81 U.S. at 528; *accord Egyptian Goddess*, 543 F.3d at 670.

i.    **Plaintiff's Products Do Not Infringe**

As this is a declaratory judgment action, the ultimate burden is on the Defendant patent owner to prove that the product at issue meets the limitation of the claim. Thus, for Plaintiff to succeed on the merits in the context of this TRO, all Plaintiff must demonstrate is that Defendant likely will not be able to carry that burden of showing the accused products are infringing the '404 patent. *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). Prior art is the universe of printed publications and products, including inventions, improvements, presentations, and publications, that are available before a patent's filing date and relevant to the disputed patent's claims. 35 U.S.C. § 102. For design

patents, "prior art" includes analogous art that is from the same field of endeavor as the claimed design or is reasonably pertinent to the particular problem with which the invention is involved. *Samiam Grp., LLC v. Coopersburg Assocs., Inc.*, 650 F. Supp. 3d 295, 306–07 (E.D. Pa. 2023). "In other words, prior art is what is not 'new.'" *Am. Innotek, Inc. v. United States*, 128 Fed. Cl. 135, 154 (2016), *aff'd*, 706 Fed. App'x 686 (Fed. Cir. 2017). As prior art predates the claimed invention, it serves as a reference point for assessing novelty and non-obviousness and cannot be deemed infringing.

The '404 patent application was filed on November 21, 2023. *See* Dkt 1; Ex. 1. Therefore, any analogous art prior to November 21, 2023, which is in the same field of endeavor is prior art. Chinese Patent: CN 307506858 S was filed on May 11, 2022 and subsequently issued on August 19, 2022. *See* D.I. 1; Ex. 6. Thus, Chinese Patent: CN 307506858 S is prior art to the design claimed in the '404 patent. Plaintiff's accused products are identical in all but color to the prior art Chinese Patent: CN 307506858 S as seen in FIG 1 and FIG 2.



| | |
|---|---|
| **FIG 1:** Isometric view of Plaintiff's Accused Product | **FIG 2:** Isometric view of design claimed in Chinese Patent: CN 307506858 S |

Since Plaintiff's accused products are identical to the prior art, Plaintiff's accused products cannot infringe on the claimed design in the '404 patent.  At a minimum, because Plaintiff's products are identical to the prior art, Plaintiff is highly likely to succeed on the merits of its declaratory judgment claim for non-infringement.  This is because "it is axiomatic that that which would literally infringe if later anticipates if earlier."  *Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001).  That is, if the patent were broad enough to encompass Plaintiff's design, it would necessarily be broad enough to encompass the prior art, rendering the patent invalid.

9

Additionally, to establish noninfringement of a design patent, Plaintiff must show that an "ordinary observer" would not be deceived into believing that the accused product is the same as the patented design. *Egyptian Goddess, Inc.*, 543 F.3d at 670. "When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Id.* at 678. "And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id.*

Here, when the design of the accused product and the design claimed in the '404 patent are examined (while keeping the prior art Chinese patent in mind), the stark differences between them become readily apparent such that no reasonable finder of fact could confuse one for the other. Moreover, the similarities between the designs of the prior art and the patented design dictate that "small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id* at 676. As seen above, the accused products are identical to the prior art. However, the second opening disclosed in the '404 patent is a distinctly different design element from that seen in the accused products. This design element is easily observable in a side-by-side comparison of the patent and the accused product:

4939-1708-3734, v. 1



**FIG 3:** Figure 3 of the '404 patent depicting second

opening



**FIG 4:** Unzipped view of Plaintiff's accused product

11

|  |  |
| --- | --- |
| **FIG 5:** Bottom view of Plaintiff's accused product | **FIG 6:** Top view of Plaintiff's accused product |

As seen in the foregoing Figures, the accused product lacks the second opening, which is a distinct design element claimed in the '404 patent. Accordingly, when applying the ordinary observer test while understanding the proximity of the prior art to the design at issue, it is readily apparent that the overall ornamental designs of the '404 patent and the accused product are plainly dissimilar such that no reasonable finder of fact could conclude that the accused product meets the ornamental appearance of the '404 claim. Since Plaintiff's accused product cannot infringe on the claimed design in the '404 patent, Plaintiff is highly likely to succeed on the merits of its declaratory judgment claim for non-infringement.

### C.  Plaintiff Will Suffer Irreparable Harm In the Absence of a Preliminary Injunction

Once a likelihood of success on the merits has been shown, a plaintiff must show that it is likely to suffer irreparable injury absent entry of the requested

injunction. *See Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008). "If imminent irreparable harm exists, 'the remedy ought ordinarily to issue' unless the claim is frivolous, granting the remedy would cause greater harm than denying it, or the plaintiff has contributed in some way to the emergency nature of the need for relief." *Trilogy Portfolio Co., LLC v. Brookfield Real Est. Fin. P'rs, LLC*, 2012 WL 120201, at *4 (Del. Ch. Jan. 13, 2012). In the case at hand, Plaintiff is facing imminent and irreparable harm, which will only be exacerbated in the absence of a temporary restraining order.

Defendant has threatened to remove Plaintiff's product listing on Amazon.com. Amazon.com serves as Plaintiff's primary sales channel, accounting for a significant percentage of its revenue. The potential freezing of Plaintiff's inventory will significantly disrupt its ability to meet customer demand. Customers who otherwise would purchase Plaintiff's products will seek alternative suppliers, many of whom are Plaintiff's direct competitors, leading to a permanent loss of market share. Courts have recognized that loss of market share and the ability to compete are quintessential forms of irreparable harm. *See Black & Decker Inc. v. Robert Bosch Tool Corp.*, 2006 WL 3446144, at *4 (N.D. Ill. Nov. 29, 2006) ("Loss of market share is a key consideration in determining whether a plaintiff has suffered irreparable harm."); *see also Cipla Ltd. v. Amgen Inc.*, 386 F. Supp. 3d 386, 405–06 (D. Del. 2019), *aff'd*, 778 Fed. App'x 135 (3d Cir. 2019) (illustrating that irreparable

13

harm can include long-term loss of market share, price erosion and harm to goodwill). Moreover, customers viewing Plaintiff's products as unavailable or under scrutiny may associate this disruption with defects or violations, leading to diminished trust and harm to Plaintiff's goodwill. Courts have repeatedly held that damage to reputation and goodwill constitutes irreparable harm. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1154 (Fed. Cir. 2011).

Plaintiff will suffer immediate and irreparable injury, loss, or damage if a TRO is not issued.

### D. Granting the Temporary Restraining Order will not result in even greater harm to the Defendant

The balance of equities favors the issuance of a temporary restraining order. "[I]f the immediate and irreparable harm to be averted by the issuance of a temporary restraining order outweighs the burden to be suffered by the non-moving party through maintenance of the status quo, then the Court is more likely to grant such an equitable remedy." *CBOT Hldgs., Inc. v. Chicago Bd. Options Exch., Inc.*, 2007 WL 2296356, at *5 (Del. Ch. Aug. 3, 2007). In the present case, Plaintiff established a high likelihood of success on the merits; therefore, the balance of harm does not need to weigh heavily in their favor. However, the balance of harm does, nevertheless, weigh heavily in Plaintiff's favor.

Here, Plaintiff has made a strong showing of a likelihood of success on the merits, particularly by demonstrating that Plaintiff's products do not infringe the

'404 patent. Plaintiff has also established that it faces immediate and irreparable harm—including the loss of market share, reputational damage, and significant disruption to its business—if the requested injunctive relief is not granted. These harms are direct, imminent, and cannot be remedied by monetary relief.

In contrast, any injury that Defendant might suffer from entry of a temporary restraining order is negligible and self-inflicted. Any harm claimed by Defendant arises solely from its own bad-faith conduct, including threats to exploit Amazon's enforcement mechanisms by wrongfully asserting patent rights while avoiding judicial resolution of its claims. Defendant's attempts to stifle competition through unfair tactics should not be considered when weighing the hardships.

### E.   The Public Interest Favors Granting Temporary Injunctive Relief.

The public is necessarily harmed by not granting Plaintiff's TRO because failure to stop Defendant's abuse deprives the public of competition. If Defendant files a complaint on Amazon, the public—specifically customers—will be harmed, as they will be unknowingly deprived of access to a competitive marketplace. The law has long recognized that the public is the ultimate beneficiary of a competitive marketplace. *See Atl. Richfield Co. v. Tribbitt*, 399 A.2d 535, 548 (Del. Ch. 1977) (illustrating the adverse effects of reduced competition on public welfare). Indeed, access to the free market is what led the Supreme Court to condemn practices that would limit the public's access to unpatented articles (like those here). *Kimble v.*

*Marvel Ent., LLC*, 576 U.S. 446, 452 (2015) (An unpatented article is "in the public domain and may be made and sold by whoever chooses to do so. . . . Allowing even a single company to restrict its use . .  would deprive the consuming public of the advantage to be derived from free exploitation of the discovery." (internal quotations omitted)).

Even if Defendant were to somehow establish infringement, it can seek monetary damages that will fully and completely compensate for any infringement. However, if the Court does not grant Plaintiff's TRO application, the consuming public will be forced to experience less opportunity and less options in the marketplace. They can never go back and achieve the benefits of open competition once the Court determines as a matter of law that Plaintiff does not infringe. Thus, the consuming public will be irreparably harmed if the Court does not enter the TRO.

## IV.    NO BOND FOR THE TRO OR PRELIMINARY INJUNCTION

Here, the TRO seeks nothing more than to maintain the traditional, natural state of free and open competition where both Plaintiff and Defendant can sell on on-line marketplaces.  It prevents the Defendant from profiting from abusing Amazon's intellectual property enforcement system and wrongfully asserting patent rights.  For the reasons stated above, Defendant will suffer no damage from the TRO since Plaintiff does not infringe on the '404 patent.  If Defendant believes it has any

16

basis for infringement, it is free to bring a claim in court and attempt to prove it. Hence, there is no reason for a bond.

## CONCLUSION

For the foregoing reasons, FutureDiamond respectfully requests that the Court enter an Order in the form filed herewith granting its motion for a Temporary Restraining Order.

OF COUNSEL:

Matthew De Preter
ARONBERG GOLDGEHN
225 W. Washington St. Ste. 2800
Chicago, IL 60606
312-755-3153
cdepreter@agdglaw.com

Dated: July 17, 2025

Respectfully submitted,

PRICKETT, JONES & ELLIOTT, PA

*/s/ Briana Manobianco*
J. Clayton Athey (#4378)
Briana Manobianco (#6330)
1310 North King Street
Wilmington, DE  19801
302-888-6507
jcathey@prickett.com
bvmanobianco@prickett.com

17